**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANIL VAZIRANI, et al., )<br> )<br> Plaintiffs, )<br> )<br>v. )<br> )<br>MARK V. HEITZ and JORDAN CANFIELD, )<br> )<br> Defendants. )<br>_____ ) | **CIVIL ACTION**<br><br>No. 09-1311-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' motion to dismiss plaintiffs' amended complaint. (Doc. 54). The motion has been fully briefed and is ripe for decision. (Docs. 55, 57, 60). Defendants' motion is granted in part and denied in part for the reasons herein.

**I. Facts**

Plaintiff Secured Financial Solutions Services (SFS) is an independent marketing organization (IMO), a non-company affiliated organization that contracts with insurance companies, located in Arizona. Plaintiff Anil Vazirani is the Manager of SFS. Plaintiffs contracted with Aviva USA, an insurance company, from 2005 until January 30, 2009. Vazirani sold more than $10 million in annuity premiums and SFS produced almost $100 million in annuity premiums for Aviva. Plaintiffs have not received any consumer complaints during their contractual relationship with Aviva. Defendant Mark Heitz is the Vice President of Sales for Aviva and Defendant Jordan Canfield was employed by AmerUS Aviva Annuity Group. Defendants reside in Topeka, Kansas.

Advisors Excel, another IMO, was founded by a group of men who were fraternity brothers with Heitz.[1]  Advisors Excel allegedly exploited its relationship with Heitz and obtained more advantageous commission splits and more support from Aviva than other IMOs. Advisors Excel also allegedly caused Aviva to terminate the contracts between IMOs so that Advisors Excel could solicit the employment of the most productive advisors.  After resigning from Aviva, Canfield contracted with Advisors Excel.  Defendants and Advisors Excel allegedly agreed to sever the relationship between plaintiffs and Aviva.

On November 6, 2008, Canfield called Vazirani and informed him that Aviva would be terminating his producer contract and those of all the agents at SFS.  Canfield told Vazirani that they had received complaints from other agents about plaintiffs' business practices. Canfield stated that Aviva was going to focus on its key groups and that the relationship with plaintiffs had been strained since Aviva became involved with Advisors Excel.  Aviva's counsel sent an email to plaintiffs' counsel stating that the contract was being terminated without cause on January 30, 2009.  On March 20, Aviva's counsel sent a letter stating that the reason for termination was due to a deferred annuity sales bubble and the desire to focus on core marketing groups and producers.  Plaintiffs allege, however, that they were a part of various core groups within Aviva but were the only ones that were terminated.

---

[1] Plaintiffs have a pending lawsuit against Advisors Excel in Arizona.  That suit initially was brought against Heitz but he was dismissed for lack of personal jurisdiction. Plaintiffs subsequently initiated this action.

Plaintiffs filed this action alleging claims of tortious interference with contract and business expectations, civil conspiracy, aiding and abetting, defamation and trade libel. Defendants move for dismissal on all claims.

**II.   Motion to Dismiss Standards: FRCP 12(b)(6)**

The standards this court must utilize upon a motion to dismiss are well known. To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff. Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon this court's consideration. Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005).

**III.   Analysis**

Defendants move to dismiss plaintiffs' amended complaint on the basis that it fails to state a claim. A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules. See ORI, Inc. v. Lanewala, 147 F. Supp.2d 1069, 1078 n. 9 (D. Kan. 2001). Plaintiffs have alleged tort claims against defendants. The Kansas Supreme Court has held that the law of the state where the tort occurs

controls. See Lemons v. Lewis, 963 F. Supp. 1038, 1050 (D. Kan. 1997)(citing Ling v. Jan's Liquors, 237 Kan. 629, 635, 703 P.2d 731, 735 (1985)). All of the acts alleged by plaintiffs occurred in the state of Arizona. Accordingly, Arizona law controls.

### A. Tortious Interference[2]

Plaintiffs allege that defendants have tortiously interfered with both the contract with Aviva and their business expectancies with their agents and clients. To prevail on these claims, plaintiffs must establish the following: 1) the existence of a valid contractual relationship or business expectancy; 2) defendants' knowledge of the relationship or expectancy; 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) damages. Dube v. Likins, 216 Ariz. 406, 411, 167 P.3d 93, 98 (Ariz. Ct. App. 2007). Defendants assert that plaintiffs have failed to allege an intentional interference by defendants.

Plaintiffs respond that the following allegations support interference:

> Plaintiffs were valued long-time agents of Aviva, who consistently generated millions of dollars in revenue for Aviva without a single complaint. [Amended Complaint, ¶¶ 20-22].

> Defendant Heitz repeatedly used his position at Aviva to benefit Plaintiffs' direct competitor, Advisors Excel, LLC, to the detriment of Plaintiffs. [Amended Complaint, ¶¶ 25-28; 33-36].

---

[2] Although tortious interference with contract and tortious interference with business expectancy are separate causes of action, the elements to prove each are virtually identical. See Southern Union Co. v. Southwest Gas Corp., 180 F. Supp.2d 1021, 1047 n. 41 (D. Ariz. 2002). Thus, the analysis for both will be combined in this subsection.

-4-

> Defendant Canfield lied to Mr. Vazirani about the reasons behind the termination of Plaintiffs' Aviva contracts and admitted Canfield, Heitz and Heitz's fraternity brothers at Advisors Excel, LLC had strained Plaintiffs' relationship with Aviva. [Amended Complaint, ¶¶ 38-42; 47-54].
>
> At least one of Plaintiffs' downline producers was told "it had been arranged" for him to leave Mr. Vazirani after his Aviva contracts were terminated and move to a wholly owned subsidiary of Aviva. [Amended Complaint, ¶ 55].

(Doc. 57 at 4-5).

Throughout the amended complaint, plaintiffs make allegations concerning defendants' plan to terminate plaintiffs' relationship with Aviva in order to benefit Advisors Excel. (Doc. 49 at ¶¶ 33, 35, 37). Moreover, plaintiffs have alleged that defendants caused Aviva to make the decision to terminate plaintiffs' contract. (Doc. 49 at ¶ 59).

Defendants further contend that plaintiffs have failed to establish an interference with the contract because they were employed by Aviva at the time of the termination. Under Arizona law, an officer of a corporation cannot interfere with the corporation's contracts. <u>Southern Union Co. v. Southwest Gas Corp.</u>, 165 F. Supp.2d 1010, 1038 (D. Ariz. 2001). Plaintiffs may proceed with their claims against defendants, however, if they establish defendants actions' were so contrary to Aviva's interests that they could only have been motivated by personal interests. <u>Id.</u>

Plaintiffs alleged several facts regarding their performance while under contract with Aviva. Plaintiffs sold millions of dollars in policies for Aviva and allegedly never received a complaint from a customer. While defendants assert that plaintiffs were no longer a part of Aviva's business model, the court must look at the facts

alleged in the amended complaint in a light most favorable to plaintiffs. The court finds, at this stage in the pleadings, that defendants' actions were contrary to Aviva's interests. Moreover, plaintiffs have alleged sufficient personal interests for defendants' actions. Plaintiffs allege that Canfield benefitted financially because he left Aviva's employment shortly after the termination of the contract and began employment with Advisors Excel. Plaintiffs further assert that Heinz benefitted from the termination of the contract because he wanted to pass business to his fraternity brothers. These allegations are sufficient to find that defendants' action were motived solely by personal reasons. See Chanay v. Chittenden, 115 Ariz. 32, 563 P.2d 287 (1977)(reversing the decision to grant summary judgment on a tortious interference claim in which the plaintiff, an insurance agent, was fired after another agent caused the termination and gained all of the plaintiff's business).

Arizona law also requires that the interference must be intentional and improper. Mann v. GTCR Golder Rauner, LLC., 483 F. Supp.2d 864, 871 (D. Ariz. 2007). "The tort is intentional in the sense that defendant must have intended to interfere with the plaintiffs' contract or have known that this result was substantially certain to be produced by its conduct." Id. at 872. Plaintiffs have sufficiently plead intentional and improper actions. The allegations are that defendants acted with the intent of causing plaintiffs' contract to be terminated by Aviva. Plaintiffs have also alleged improper conduct by defendants, including their attempt to set up plaintiff by recording conversations, intentionally straining relationships with Aviva and their alleged racial animus towards

-6-

Vazirani. After viewing the facts in a light most favorable to plaintiffs, the court finds that plaintiffs have alleged sufficient facts to support a finding that defendants interfered with their contract and business expectancy.

Finally, defendants assert that these claims must fail because plaintiffs have failed to establish that they had a future interest in the at-will contract with Aviva. The Supreme Court of Arizona has held that a plaintiff may state a cause of action for tortious interference even if the contract is an at-will contract. Chanay, 563 P.2d at 292 ("until it's terminated, the contract is a subsisting relation, of value to the parties and presumably to continue in effect.")

Therefore, defendants' motion to dismiss plaintiffs' claims of tortious interference is denied.

**B. Civil Conspiracy**

A civil conspiracy claim requires an agreement between two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means. See Dawson v. Withycombe, 216 Ariz. 84, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007). Defendants argue that this claim should be dismissed because plaintiffs have failed to adequately allege an agreement. Plaintiffs do not need to show an express agreement to prevail on a civil conspiracy claim; however, there must be at least a tacit understanding and plaintiffs must allege specific facts that support the inference of an agreement. S. Union Co. v. Sw. Gas Corp., 165 F. Supp.2d 1010, 1021 (D. Ariz. 2001). A conspiracy "may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators,

-7-

and other circumstances." Id.

After a review of the allegations, the court finds that plaintiffs have alleged sufficient facts to support an inference of an agreement between defendants and Advisors Excel. Plaintiffs have alleged defendants purposefully deteriorated their relationship with Aviva and bolstered the relationship of Aviva and Advisors Excel for the purpose of gaining agents from other IMOs and SFS. Plaintiffs have further alleged that an agreement was made towards the end of 2008.

At this stage in the pleadings, defendants' motion to dismiss the conspiracy claim is denied.

### C. Aiding and Abetting

Plaintiffs alleged that defendants aided and abetted one another in the tortious interference with a contract and business expectancy. Defendants assert that the allegations are not sufficient to state a claim. Because the court has determined that the claims of tortious interference have been sufficiently plead, the court finds that the facts are sufficient to state a claim of aiding and abetting.

Defendants' motion to dismiss this claim is denied.

### D. Defamation and Trade Libel

Defendants contend that plaintiffs' claims of defamation and trade libel must be dismissed because they have failed to allege the facts surrounding the alleged statements. A claim of defamation per se requires plaintiffs to prove that a false and defamatory communication concerning a private person was published to a third party. Dube v. Likins, 216 Ariz. 406, 417, 167 P.3d 93, 104 (Ariz. Ct. App. 2007). A claim of trade libel requires "the intentional

-8-

publication of an injurious falsehood disparaging the quality of another's property with resulting pecuniary loss." Gee v. Pima County, 126 Ariz. 116, 116, 612 P.2d 1079, 1079 (Ariz. Ct. App. 1980).

Plaintiffs' allegations concerning defamation and trade libel are nothing more than conclusory allegations that are insufficient to raise a right to relief.  There is no allegation of the substance of any statement made by defendants.  Further, there is no allegation that any statement was published to a third party. Plaintiffs' claims must therefore be dismissed. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)("only a complaint that states a plausible claim for relief survives a motion to dismiss.")

Finally, plaintiffs seek leave to amend their complaint. However, plaintiffs did not comply with this court's rules which require a plaintiff to attach the proposed amended complaint with a request to amend.  D. Kan. R. 15.1.  Further, plaintiffs' response brief does not demonstrate that an amended complaint would satisfy the pleading requirements in Iqbal.  Therefore, plaintiffs' motion to amend is denied.

**IV. Conclusion**

Defendants' motion to dismiss is granted in part and denied in part. (Doc. 54).  Defendants' motion to dismiss plaintiffs' claims of tortious interference, conspiracy and aiding and abetting is denied. Defendants' motion to dismiss plaintiffs claims of defamation and trade libel is granted.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established.

A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   15th   day of March 2011, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE